# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM LAWLER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 10-196** |
| **RICHARDSON, ET AL.,** | : | |
| **Defendants.** | : | |
| | : | |

Tucker, J.                                                                                  June ___, 2012

## MEMORANDUM OPINION

Presently before the Court is Plaintiff's Motion for New Trial (Doc. 66) and Defendants' Response in Opposition thereto (Doc. 67). Upon careful consideration of the parties' arguments, and for the reasons set forth more fully herein, Plaintiff's Motion is denied.

## I.     BACKGROUND

On January 15, 2010, Plaintiff, William Lawler ("Lawler") initiated this action against the City of Philadelphia ("the City"), Police Officer Daniel Richardson ("Richardson"), and Officers John Doe 1-3. Plaintiff later amended his Complaint on April 16, 2010 to identify Police Officer Shawn Mays ("Mays") and Sergeant James Lane ("Lane") as two of the John Doe defendants. Plaintiff then identified Officer Dimitrios Loizos ("Loizos") as the third John Doe defendant in his Second Amended Complaint filed on July 14, 2010. Plaintiff asserted claims against Defendants pursuant to 42 U.S.C. § 1983 for violations of his rights under the First, Second,

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as state tort claims for false arrest and imprisonment, and malicious prosecution. Plaintiff also asserted a Monell claim against the City.

Plaintiff alleged that his claims arose when on April 19, 2008, Officer Richardson stopped Plaintiff for a traffic violation. Plaintiff alleged that Officer Richardson actually stopped Plaintiff as a result of the politically-charged bumper stickers on his car.[1] During the stop, Officers Richardson and Loizos asked Plaintiff if he was in possession of a firearm. Plaintiff responded affirmatively and also told the officers that he had a valid permit to carry a concealed weapon. The officers asked Plaintiff to surrender his firearm and exit his vehicle so that they could conduct a search. Upon exiting the vehicle, Plaintiff locked his doors to prevent Defendants from searching the vehicle. The officers searched Plaintiff and confiscated his keys, and then placed Plaintiff in handcuffs and into the back of Officer Richardson's police vehicle. After the officers completed the search of the vehicle, they informed Plaintiff that his firearm would be confiscated, and Officer Richardson drove Plaintiff to the police station where Plaintiff was given a receipt for his firearm. Defendants also issued Plaintiff a traffic citation.

Plaintiff's claim proceeded to trial on the issues of Plaintiff's alleged violations under the First and Fourth Amendment, as well as his state law claims for false arrest and false

---

[1] The statements on the bumper stickers included: "Fear the Government that Fears Your Gun;" "Say NO to Police Brutality and Lawlessness!;" "Fight Organized Crime, Abolish the IRS;" "Defend the Constitution, Repeal the Patriot Act;" "Philadelphia Police, fulfill your oath & duty to defend the Constitution & uphold the law. Refuse to obey the illegal, draconian, and oppressive anti-gun legislation passed by our corrupt city politicians!;" "U.S. Army;" "POW-MIA You Are Not Forgotten;" "Holy Family College;" and "Father Judge High School." (Pl.'s Second Am. Compl. ¶ 15).

imprisonment.[2]  The jury rendered a verdict in favor of Defendants as to all counts. Plaintiff has

now filed this Motion for New Trial pursuant to Federal Rule of Civil Procedure 59.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 59 provides: "The court may, on motion, grant a new

trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has

heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59. Rule 59 permits

a court to grant a new trial if the jury's verdict was against the weight of the evidence, or if

substantial errors occurred in the admission or exclusion of evidence, or in the jury instructions.

Kimble v. Morgan Props., No. 02-9359, 2005 WL 2847266, at * 2 (E.D. Pa. Oct. 25, 2005)

(citing Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)).[3]  In his Motion for New

Trial, Plaintiff argues both that the Court committed trial error and that the jury's verdict was

against the weight of the evidence. The Court will address each of these arguments in turn.[4]

---

[2]Plaintiff's claims pursuant to the Fifth and Fourteenth Amendments were not submitted to the jury. The Court did not permit Plaintiff's Second Amendment or malicious prosecution claims to be submitted to the jury. (See Charging Conference Tr. 139: 17-20; 151:14-16).

[3]Commonly raised grounds for a court to grant a new trial include "(1) a prejudicial error of law; (2) the verdict is against the weight of the evidence; (3) the verdict is too large or too small; (4) there is newly discovered evidence; (5) that conduct of counsel or the court has tainted the verdict; or (6) there has been misconduct affecting the jury." Brown v. Old Castle Precast. East, Inc., No. 00-2549, 2003 WL 22999302, at *2 (E.D. Pa. Jan. 14, 2003) (citing Kiss v. Kmart Corp., No. 97-7090, 2001 WL 568974, at *1 (E.D. Pa. May 22, 2001)).

[4]Before reaching the merits of Plaintiff's Motion, the Court initially notes that "[w]ithin fourteen (14) days after filing any post-trial motion, the movant shall either (a) order a transcript of the trial by a writing delivered to the Court Reporter Supervisor, or (b) file a verified motion showing good cause to be excused from this requirement. Unless the transcript is thus ordered, or the movant excused from ordering a transcript, the post-trial motion may be dismissed for lack of prosecution. E.D. PA. R. 7.1(e). Defendants rightly point out that Plaintiff failed to request the trial transcript, or show good cause to be excused from the requirement, and argues that Plaintiff's Motion should be dismissed on that basis.
Indeed, it was irresponsible for Plaintiff's counsel not to request the transcript, and then proceed to submit the Motion for a New Trial based upon arguments which improperly rely on counsel's recollection of the record, rather than the record itself. Yet the Court finds that it would be unproductive

III.     DISCUSSION

     A.     The Court committed no harmful trial error.

     In evaluating a motion for a new trial on the basis of trial error, the Court must: (1) determine whether an error was made in the course of trial; and (2) "whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." Farra v. Stanley-Bostitch, Inc., 838 F.Supp. 1021, 1026 (E.D. Pa.1993) (citations omitted). Where a party contends that "a new trial is based on the admissibility of evidence, the trial court has great discretion . . . which will not be disturbed on appeal absent a finding of abuse." Threadgill v. Armstrong World Indus., 928 F.2d 1366, 1370 (3d Cir.1991) (citing Links v. Mercedes-Benz of N. Am., Inc., 788 F.2d 918, 921 (3d Cir.1986)).

          1.     The Court did not err in granting Defendants' Motions in Limine.

     Plaintiff first questions the Court's granting of Defendants' Motion in Limine regarding various witnesses and newspaper articles which Plaintiff sought to admit during trial. Plaintiff's primary contention is that the exclusion of these articles and witnesses was prejudicial because the evidence bore directly upon Plaintiff's claim that the Philadelphia Police Department had a custom, policy, or practice of "violating civilian's constitutional rights as it pertains to the [S]econd and [F]ourth amendments" by improperly confiscating firearms. (Pl.'s Br. at 17). The newspaper articles at issue provided accounts of Philadelphia police officers improperly confiscating firearms throughout the City. Similarly, the witnesses Plaintiff sought to introduce were individuals whose firearms were improperly confiscated and, like Plaintiff, not returned.

---

to dismiss Plaintiff's Motion based on his failure to comply with Rule 7.1. In order to remedy this failure, however, the Court has requested the relevant portions of the transcript in order to decide Plaintiff's Motion on an informed basis.

The Court first analyzes the preclusion of the newspaper articles. Newspaper articles are generally considered hearsay, and may only be used during trial in exceptional circumstances. See, e.g., Asbestos Prods. Liab. Litig. (No. VI), No. 09-069125, 2011 WL 1539883, at *3 (E.D. Pa. Feb. 22, 2011); Campbell v. City of New Kensington, No. 05-0467, 2009 WL 3166276, at *8 (W.D. Pa. Sept. 29, 2009) ("[T]o the extent that Plaintiff relies on these articles for the truth of the matters contained therein, the newspaper articles are hearsay, and in some instances, hearsay within hearsay, and cannot be considered on a motion for summary judgment.").

The Court committed no error in denying admission of the newspaper articles. Plaintiff argues that the newspaper articles were not offered for the truth of the matter asserted, but to demonstrate that the City had notice that the police department's customs or policies were resulting in widespread constitutional violations. However, in order to demonstrate that the City was on notice of these violations, we must assume that the violations and practices described in the articles actually occurred. Thus, as the Court concluded at trial, it is apparent that Plaintiff was offering these articles for the truth of the matter asserted. As a result, the Court properly excluded the newspaper articles as inadmissible hearsay.

As for the witnesses precluded from testifying, during the hearing on Defendants' Motion in Limine, Plaintiff argued for the admission of testimony from two witnesses in particular, Jeff Lavalliere and John Solomon.  During the hearing, the Court indicated that their testimony was only relevant to prove police conduct which affected them, and not to prove any custom, policy, or practice of the City's Police Department. (Mot. Hr'g Tr. 8: 10-19). The Court further noted that none of the officers involved in Solomon's or Lavalliere's weapon confiscations were Defendants in this case. (Mot. Hr'g Tr. 7: 13-17). The Court concluded that "one or two other

incidents that occurred to other civilians . . . does not go to establish a policy of the City of Philadelphia." (Mot. Hr'g Tr. 8: 16-19).

Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. The trial court has broad discretion to exclude evidence under Rule 403. Cowgill v. Raymark Indus., Inc., 832 F.2d 798, 806 (3d Cir. 1987).

Courts in the Third Circuit have relied upon Rule 403 to preclude evidence similar to the evidence Plaintiff attempted to admit here. For example, in Strauss v. Springer, the district court upheld its decision at trial to exclude an expert's testimony regarding a "shooting book" which the plaintiff wished to introduce as evidence that the City of Philadelphia had a custom or policy of using excessive force against citizens. 817 F. Supp. 1211, 1221 (E.D. Pa. 1992). "Shooting books" are investigatory files regarding any discharge of a firearm by a Philadelphia police officer, whether on or off duty. Id.  This particular shooting book contained twenty-five cases which the plaintiff wished to present, none of which involved a similar situation to the case at issue. Id. at 1222, 1224. The plaintiff's expert intended to testify about his opinion that the Internal Affairs Unit of the Philadelphia Police Department had wrongly concluded that some of those shootings were proper. Id. The district court excluded the testimony on the grounds that testimony regarding the shooting books "would have required a separate mini-trial for each to determine whether the decision of the Philadelphia Police Review Board as to each one was right or wrong." Id. at 1224. Moreover, the plaintiff would have had  to present facts regarding each

shooting, and Defendant would have had to cross-examine on each incident. Id. Such mini-trials

"would have taken a substantial amount of time to do, would have confused the central issue of

the case, and mislead the jury by introducing factual scenarios not related to the facts of this

case." Id.

Similarly, in Clark v. City of Philadelphia, as part of its municipal liability claim, plaintiff

sought to admit evidence of civilian complaints against each of the defendant police officers. No.

92-4700, 1994 WL 388559, at *10 (E.D. Pa. July 27, 1994). The complaints against one

defendant officer involved his conduct in a variety of circumstances over a period of years. Id.

The Court excluded the complaints reasoning that "[i]f I would allow plaintiffs to present

evidence of the complaints, I also would have to allow defendants opportunity to rebut that

evidence." Id. Pursuant to Strauss and Rule 403, the Court concluded that such a process would

have been confusing to the jury and overly time-consuming. Id.

Courts will typically only admit evidence of prior incidents when they come in a narrow

period of time and are of a similar nature to the incident at issue. See, e.g., Beck v. City of

Pittsburgh, 89 F.3d 966 (3d Cir. 1996) (permitting admission of five complaints against the

defendant officer as evidence that the City knew or should have known of the officer's propensity

for violence when making arrests); see also Smith v. City of Phila., No. 06-4312, 2009 WL

3353148 (E.D. Pa. Oct. 19, 2009) (permitting admission of one complaint previously filed

against a defendant officer which resulted in the finding of use of excessive force, and occurred

approximately one month before the alleged assault on the plaintiff); Wakshul v. City of Phila.,

998 F. Supp. 585 (E.D. Pa. 1998) (refusing to admit complaints against the defendant officers

because the plaintiff offered no information regarding the chronology, subjects, or contexts of the

investigations).

Based on this case law, it is clear that the Court made no error in denying the admission of Lavalliere and Solomon's testimony. First, none of the Defendant Officers involved in Plaintiff's claim were involved in the incidents involving Solomon or Lavalliere, which renders the relevance of their testimony questionable at best.  Then, as Defendants note, even assuming that the testimony would have been relevant, Plaintiff would have had to put on evidence to demonstrate that Lavalliere and Solomon's weapons were unconstitutionally confiscated. In turn, the Court would have had to permit Defendants to cross-examine Lavallierre and Solomon to dispute their contentions regarding each of these instances. Such a mini-trial would certainly have confused the jury, been overly time-consuming, and as a result, unfairly prejudicial to Defendants. As a result, the decision to exclude such evidence was completely within the Court's discretion, and was not harmful error.

2.    **The Court did not err in denying Plaintiff's "for cause" challenges of Jurors 4 and 5.**

Plaintiff next argues that the Court erred in denying Plaintiff's for cause challenges of two jurors – Jurors 4 and 5 in particular. Plaintiff contends that the Court should have excluded the jurors because when asked whether they were "more likely to believe the testimony of a police officer merely because he is a police officer," they answered affirmatively. When probed by Plaintiff's counsel, Juror 4 indicated that he could "try to be fair, but, according to Plaintiff's counsel, he will follow his conscious," and Juror 5 "indicated that she could be fair but she changed her answers too many times." (Voir Dire Tr. 1:10-17). The Court informed the parties that if Juror 5 "indicated that she could be fair," that would not be questioned, however, the

Court proceeded to call Juror 4. (Voir Dire Tr. 2:7-9). When questioned, Juror 4 also indicated

that he could follow the instructions of the Court.[5]

"[D]istrict courts have been awarded ample discretion in determining how best to conduct

the voir dire." Kirk v. Raymark Indus., Inc., 61 F.3d 147, 153 (3d Cir. 1995) (quoting United

States v. Salamone, 800 F.2d 1216, 1226 (3d Cir. 1986)). "In determining whether a particular

juror should be excused for cause, [the Court's] main concern is 'whether the juror holds a

particular belief or opinion that will prevent or substantially impair the performance of his duties

as a juror in accordance with his instructions and his oath.'" Id. "A juror is impartial if he or she

can lay aside any previously formed 'impression or opinion as to the merits of the case' and can

'render a verdict based on the evidence presented in court.'" Id. (quoting United States v. Polan,

970 F.2d 1280, 1284 (3d Cir. 1992)). A juror's protestations of impartiality may not be accepted

blindly, however, particularly if "other facts of record indicate to the contrary." Id. (citing Gov't

of the Virgin Islands v. Dowling, 814 F.2d 134, 139 (3d Cir. 1987)) (holding that, in an asbestos

---

[5]The full exchange between the Court and Juror 4 was as follows:

| | |
|---|---|
| Q: | There was a question that was posed to you about whether or not you would believe a police officer merely because he was a police officer. And you raised your hand initially is that correct? |
| A: | That is correct. |
| Q: | Okay. If you are selected as a juror you will be told that you have to evaluate the witnesses, all witnesses by the same standards whether they are police or civilian. Do you understand that? |
| A: | I do. |
| Q: | Would you be able to follow that instruction? |
| A: | I think so, yes. |
| Q: | Okay. I know I am asking you to predict even though you don't know anything about the case more than what they have told you, but to the best of your ability, can you give me a yes or a no. Would you be able to follow the instructions of the Court, yes or no? If you can. If you can't, I understand that too. |
| A: | Yes. |
| Q: | Okay. All right, thank you, sir. |

(Voir Dire Tr. 3:5 - 4:24).

case, a district court improperly refused to strike a juror who worked with asbestos for years, had two uncles who had been exposed to asbestos die from lung cancer, knew many colleagues who presumably had asbestos-related medical problems, believed he was likely to contract an asbestos-related disease himself, and indicated he was leaning in favor of the plaintiff).

In this case, Jurors 4 and 5 made assurances that they would be fair in applying the law and following the instructions of the Court. Other than their original answers to Plaintiff's voir dire, the Court had no reason to question the jurors' representations that they could be impartial in following the Court's instructions. This case is far from analogous to Kirk, in which the district court had a plethora of other evidence to refute the juror's contention that he could be impartial. Here, the mere fact that the jurors indicated that they were more likely to believe a police officer simply because of his station, without more, did not automatically lead to the conclusion that they could not be impartial. Thus, because Plaintiff presented no further facts of record to establish the jurors' inability to be impartial, the Court committed no error in refusing to strike the jurors for cause.

### 3. The Court did not err in refusing to permit Plaintiff to cross-examine Officer Richardson regarding the Fourth Amendment.

Plaintiff's third argument that a new trial is warranted is that the Court did not permit a certain line of questioning during Plaintiff's cross-examination of Officer Richardson. The relevant portion of the cross-examination of Officer Richardson proceeded as follows:

> Q:      Earlier you testified that in the police academy and during
>         your training that you were trained on constitutional rights,
>         correct?
> A:      Yes, sir.
> Q:      More specifically, the Fourth Amendment search and

|           | seizure, correct? |
|-----------|-------------------|
| A:        | Yes, sir. |
| Q:        | And so that means that you are familiar with what is called the Terry Frisk correct? |
| A:        | Yes. |
| Q:        | Can you please tell the jury your understanding of the Terry Frisk? |
| Ms. Shoffel: | Objection. |
| The Court: | Sustained. |
| Mr. Lee:  | Your honor he said he is going – |
| The Court: | We are going to take a recess. |
| [Recess] | |
| Mr. Lee:  | You sustained the objection about me asking about the Terry Frisk. |
| The Court: | Yes. |
| Mr. Lee:  | He testified that he was, he received training by the Philadelphia Police Department specifically about the Fourth Amendment and he said the term that he did a reach and frisk search of the vehicle and he has an understanding of that and I want him to relate to the jury what his understanding was. He opened the door. |
| Ms. Shoffel: | Your honor – |
| The Court: | I sustained the objection. |
| Mr. Lee:  | Can I at least talk about the Terry frisk? |
| The Court: | No. You have asked him about the frisk and about a reach and he is not in a position to discuss the law and I am not going to permit him to do that.[6] |
| Mr. Lee:  | Thank you, your honor. |

(Trial Tr. 81:11 - 83:1).

Plaintiff argues that the Court should not have sustained Defendants' objection because

Officer Richardson indicated that he was trained in Fourth Amendment law. Plaintiff particularly

emphasizes the fact that during his deposition, Officer Richardson testified that "the law"

establishes that "when a civilian is approached by a police officer they must disclose that they

---

[6]See, e.g., (Richardson Test. 65: 5-6) ("So I ask you again, [on] what legal grounds did you pull Mr. Lawler out of his car?"); (Richardson Test. 68-69) (questioning Richardson regarding "frisk and reach searches"); (Richardson Test. 72: 19-20) ("Where did you search when you did your reach?").

have a permit to carry and that they are armed, even if they are not breaking any law." (Pl.'s Br. 24).[7] However, the Pennsylvania Uniform Firearms Act provides that "[n]o county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa. C.S.A. § 6120. Plaintiff concludes that "Officer Richardson's assertion during direct examination that the municipal ordinance that he was following was a 'law' needed a cross examination in the wake of the fact that it was in complete contradiction of 18 Pa. C.S.A. § 6120." (Pl.'s Br. 25).

Plaintiff is mistaken on several grounds. First, Officer Richardson never testified on direct examination at trial that he was following a municipal ordinance which was "the law" when he confiscated Plaintiff's firearm. The Court has searched the transcript of Officer Richardson's testimony and cannot find any reference to "the law" or a municipal ordinance during Officer Richardson's direct examination.  In fact, on cross examination, when asked whether Plaintiff's failure to inform the officers that he was carrying a firearm violated a law, Officer Richardson responded, "It's not a violation of any law," and further added that he "was under the impression that [Plaintiff] had violated policy."  (Richardson Test. 63: 9-17).

More importantly, the mere fact that Officer Richardson may have referenced a municipal ordinance during his deposition, which the Court is unable to conclude, was grounds for pointing out an inconsistency in his testimony, but in no way qualified as "opening the door" to questions

---

[7]Officer Richardson's actual deposition testimony was, in relevant part, that "the police department has a regulation that requires permit holders to immediately advise a police officer if they have contact with that officer that they're in possession of a firearm," and "that information is provided in a written form to individuals who receive gun permits." (Richardson Dep. 15:11-21).

about Fourth Amendment law on cross examination. The Court simply cannot fathom how Officer Richardson's alleged testimony about a municipal ordinance would permit him to testify regarding the Fourth Amendment. Moreover, contrary to Plaintiff's contention, Officer Richardson did not testify on direct examination regarding the circumstances under which he was permitted to conduct a reach search. He testified regarding his training in making car stops, i.e., that he was trained to be on high alert, as well as his reasons for conducting the reach search of Plaintiff's vehicle. (Richardson Test. 39: 4-19). Plaintiff was given sufficient latitude to question Officer Richardson regarding these subjects. See supra note 5.

Finally, Federal Rule of Evidence 701 provides that "[i]f a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[8] FED. R. EVID. 701. Plaintiff in no way attempted to qualify Officer Richardson as an expert on reach searches. Nor did he demonstrate that Officer Richardson was able to testify regarding the Fourth Amendment as a lay witness. Knowledge of the Fourth Amendment is the type of specialized knowledge that would be within the scope of Rule 702, and therefore barred pursuant to Rule 701. Thus, the Court committed no error in limiting Plaintiff's cross-examination of Officer Richardson.

### 4.    The Court did not err in excluding the Pennsylvania Uniform Firearms Act.

---

[8]Federal Rule of Evidence 702 governs testimony by experts. FED. R. EVID. 702.

Plaintiff also argues that the Court erred in prohibiting Plaintiff from questioning Commissioner Ramsey regarding the Pennsylvania Uniform Firearms Act (the "Act") and from admitting the Act into evidence. Plaintiff argues that the Court should have admitted the Act because the memorandum which the officers relied upon in confiscating Plaintiff's weapon, which is given to all gun permit holders, referenced the Act.[9] The relevant part of the memorandum, which is signed by Commissioner Ramsey, requires permit holders to, "when in contact with a law enforcement officer, follow all instructions given. Police officers and other law enforcement personnel as part of their official duties may encounter you on the street, inside a business or residence, or during a vehicle stop. The officers are unaware that you may be armed. You should not make any sudden moves. You must inform the officer immediately that you are armed and possess a valid permit to carry. Then follow the officer's instructions explicitly." (Ramsey Test. 19: 4-9; 20:23 - 21:8). Plaintiff contends that the memorandum's instruction requiring permit holders to immediately inform officers that they are armed qualifies as regulation of firearms in contravention of the Act.

Again, the Court committed no error in excluding the Act. First, the Court finds Plaintiff's interpretation of the Act highly questionable. The Court is unconvinced by Plaintiff's argument that requiring permit holders to reveal to police officers that they are carrying a weapon, a requirement intended to promote both officer and civilian safety, is the type of limitation that qualifies as the regulation of the lawful ownership or possession of firearms. The

---

[9]As set forth earlier, the Act provides that "[n]o county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa. C.S.A. § 6120.

requirement itself does not prevent individuals from lawfully owning or possessing firearms.

Even more to the point, however, is that admission of the Act into evidence would have contradicted the Federal Rules of Evidence. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Furthermore, Rule 403 explains that "[a]lthough relevant, evidence may by excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

Plaintiffs' claim was that Defendants' conduct violated the Second and Fourth Amendments, not the Pennsylvania Uniform Firearms Act. Correspondingly, even assuming that Defendants' conduct did violate the Act, that violation would be irrelevant to Plaintiff's actual claims because it does not make it any more or less likely that Defendants' conduct also violated Plaintiff's constitutional rights. As such, the evidence would only serve to confuse the jury. Thus, the Court properly excluded evidence of the Act pursuant to Federal Rules of Evidence 401 and 403.

### 5.      The Court did not err in striking Plaintiff's voir dire questions.

Plaintiff's fifth argument for a new trial based upon trial error is that the Court erred in striking several of Plaintiff's voir dire questions. Plaintiff contends that the questions which the Court struck "go to the very heart of Plaintiff's case." (Pl.'s Br. 34)  In particular, the Court struck the following questions:

4.      Do you accept as a matter of fact that all police officers tell the

truth all the time?

7.    Do you believe that members of the law enforcement community are, or should be, exempted from obeying the law?

8.    Do you believe that police officers should be held to the same standards as the general public?

9.    Do you accept that regardless of one's own opinions that the law must still be followed?

10.   As a potential juror can you decide to uphold that law even if you disagree with it?

13.   Do you believe in a person's right to engage in free speech lawfully without retaliation from the government?

19.   Have you, your family members or close friends ever been a member of a Citizens Militia or any other paramilitary organization?

20.   Do you believe that individual City of Philadelphia Police Officers can disobey the United States Constitution's Second Amendment because they disagree with the Second Amendment's grant of the right of individual citizen's right to bear arms?

21.   Do you believe that the City of Philadelphia Police Officers should be allowed to stop law abiding citizens under the pretext of the commission of crimes?[10]

23.   Do you believe [in] the full exercise of your constitutionally guaranteed rights?

24.   Do you believe that the United States Constitution affords you the right to be left alone as long as you abide by the law?

25.   Do you believe that City of Philadelphia Police Officers should be allowed to violate citizens' constitutionally guaranteed rights without civil liability?[11]

"The purpose of the voir dire is to both 'enable the court to select an impartial jury and assist counsel in exercising peremptory challenges.'" Butler v. City of Camden, 352 F.3d 811, 814 (3d Cir. 2003) (quoting Mu'Min v. Virginia, 500 U.S. 415 (1991)). During voir dire, the court must "test prospective jurors for actual bias and strike for cause those persons 'who will not be able to impartially follow the court's instructions.'" Id. (citing Rosales-Lopez v. United States,

_____

[10]The Court also struck Question 22 because it was identical to Question 21.

[11]Plaintiff alleges that the Court struck Question 26 as well, however, Plaintiff's voir dire only contained twenty-five (25) questions.

451 U.S. 182, 188 (1981)). The trial judge is "vested with broad discretion" in determining the scope of the voir dire. Id. (citing Rosales-Lopez, 451 U.S. at 188-89). "[A]n abuse of discretion will only be found where the district court's voir dire examination is 'so general that it does not adequately probe the possibility of prejudice.'" Id. (quoting Waldorf v. Shuta, 3 F.3d 705, 710) (3d Cir. 1993)). "It is the rare case that the failure to ask a particular question has resulted in reversal. However, [appellate courts] have found error and reversed in cases where the district court barred all inquiry into a relevant subject matter designed to elicit a disqualifying prejudice." Id. at 816.

The Court first generally notes that many of Plaintiff's stricken questions, e.g., Questions 7, 8, 13, 20, 21, 23, 24, and 25, inquired about the potential jurors' beliefs. Such questions did not shed light on a juror's ability to be impartial regardless of their beliefs, which is the primary concern in selecting a jury. Thus, many of Plaintiff's questions were stricken because they were irrelevant to the selection of an impartial jury.

To address each question more specifically, the Court will begin with the exclusion of Questions 4, 7, and 8, which the Court properly excluded as repetitive and improperly worded. Courts generally acknowledge that in civil cases involving law enforcement, parties should be permitted to voir dire the jury panel regarding potential law enforcement bias. See, e.g., Butler, 352 F.3d at 817 (citations omitted) (agreeing with sister circuits that "where government [law enforcement] agents are apt to be key witnesses, the trial court, particularly if seasonably requested, should ordinarily make inquiry into whether prospective jurors are inclined to have greater faith in the agents' testimony merely by virtue of their official positions."). In this

instance, the Court permitted Plaintiff to ask several questions regarding this bias.[12] In fact, in a conference with the Court regarding the voir dire questions, the Court informed Plaintiff that "if [members of the jury panel] are selected as jurors, they will be told that they have to judge all witnesses by the same standards . . . . So you can ask them something to that extent." (Voir Dire Conference Tr. 2:1-6). The Court added, "I understand where you are going and I am not telling you you can't go there, but I am telling you . . . the phraseology that you are using is not appropriate." (Voir Dire Conference Tr. 2: 9-12). The Court further explained, "I am not telling you you can't ask the general question, but the more specific question is not appropriate unless someone answers [in a way that raises questions of bias], then you can follow up with a more specific question." (Voir Dire Conference Tr. 3: 19-23).Thus, the record makes clear that the Court did not preclude Plaintiff from questioning jurors regarding potential law enforcement bias. The Court only questioned the phrasing of Plaintiff's questions. Moreover, Plaintiff was permitted to ask such questions if the juror responded to a more general question regarding law enforcement bias which reasonably led Plaintiff to question the juror's ability to be impartial.

Next, Questions 20, 21, 24, and 25 all required the jury panel to make assumptions which tread too closely to the issues in Plaintiff's case. The questions asked jurors about their opinions regarding what is acceptable police conduct, or what police conduct is permitted by the Constitution. More fundamentally, the questions unfairly required the jurors to presume that the

---

[12]Plaintiff was permitted to ask the jury panel:
1.   Have you ever been a member of law enforcement or employed by a law enforcement agency?
2.   Do you currently or in the past have [you had] a close relative, household member or close friend that has worked in law enforcement or employed by a law enforcement agency?
3.   Are you more likely to believe the testimony of a police officer merely because he is a police officer?

officers had violated constitutional rights, or that the plaintiff had abided by the law. These were all questions of law to be provided for in the jury charges, and therefore, were inappropriate in voir dire. See, e.g., Butler, 352 F.3d at 819 (concluding that the district court reasonably precluded a question "concerning whether a juror would be inclined to believe that any force used in the course of an arrest was lawful" since the matter concerned a question of law more appropriate for the jury charge). Similarly, Question 13, in asking whether members of the jury panel believed in a person's right to engage in free speech lawfully without retaliation, Plaintiff once again presents the jury with a hypothetical that suggests to the jury his version of the facts – that Plaintiff was acting lawfully, and was then retaliated against. Such a suggestion is inappropriate during voir dire.

As for Questions 9 and 10, the Court properly excluded those questions because they were adequately addressed in the jury instructions. See Jury Instructions at 3-4 ("I will further explain the rules of law to you now before you go to the jury room. . . You must follow all of the rules as I explain them to you. . . Even if you disagree or don't understand the reasons for some other rules, you are bound to follow them."); see also Butler, 352 F.3d at 818-19 (establishing that in some circumstances, a jury charge can have the effect of curing any harm resulting from an inadequate voir dire).

As for Question 19, although the Court initially precluded it, during the conference regarding the voir dire questions, the Court indicated to Plaintiff's counsel that it had a question about Question 19. (Voir Dire Conference Tr. 3:25). In response, Plaintiff's counsel told the Court that he was "okay with 19," to which the Court responded, "Okay. Great." (Voir Dire Conference Tr. 4:1-3). As such, the Court rejects  Plaintiff's argument that the Court erroneously

excluded Question 19, when Plaintiff withdrew the question before the Court could make a final

decision. Based upon the foregoing, the Court was within its discretion in denying all of the voir

dire questions at issue.

### 6.    The Court did not give the jury an improper instruction.

Plaintiff's last argument that trial error occurred is that the Court gave an improper jury

instruction. Under a section of the instructions titled "Section 1983: Liability in Connection with

the Actions of Another – Municipalities – General Instruction," the Court instructed the jury, in

relevant part that

> If you find that Mr. Lawler was deprived of his First and Fourth Amendment
> rights, the City of Philadelphia is liable for that deprivation if Mr. Lawler proves
> by a preponderance of the evidence that the deprivation resulted from the City of
> Philadelphia's official policy or custom – in other words, that the City of
> Philadelphia's official policy or custom caused the deprivation. **It is not enough
> for Mr. Lawler to show that the City of Philadelphia employed a person who
> violated Mr. Lawler's rights. Mr. Lawler must show that the violation
> resulted from the City of Philadelphia's official policy or custom.**

(emphasis added).

Plaintiff takes particular issue with the second and third sentences, arguing that courts

have long held that "a single constitutional violation can provide the basis for liability for failure

to train where 'the need for more or different training is so obvious, and the inadequacy so likely

to result in the violation of constitutional rights' that the policymaker's inaction amounts to

deliberate indifference." (Pl.'s Br. 35) (citing Bd. Of Cnty. Comm'rs v. Brown, 520 U.S. 397,

407-09 (1997); Canton v. Harris, 489 U.S. 378, 391 (1989)).

Plaintiff's argument fails for a number of reasons. First, the instruction Plaintiff cites is

taken verbatim from the Third Circuit Model Jury Instructions for section 1983 municipal

liability. Thus, it is difficult to credit Plaintiff's assertion that the instruction is "legally

incorrect." Second, Rule 51 of the Federal Rules of Civil Procedure requires a party to raise any

objections to the jury instructions on the record  before the jury is instructed. FED. R. CIV. P. 51.

"[W]here a defendant fails to object to the form and language of special verdict forms or to the

jury charges, before closing arguments or at the close of charging before the jury retires to

deliberations, and the form has been submitted to counsel, objections are waived." Neely v. Club

Med. Mgmt. Servs., 63 F.3d 166, 200 (3d Cir. 1995). If a party fails to timely object to an

instruction, then the Court need only review the instruction at issue for plain error. See FED. R.

CIV. P. 51(d)(2); ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d 622, 669

(E.D. Pa. 2003). As Defendants note and Plaintiff appears to admit, Plaintiff failed to raise an

objection to this instruction during trial.

   The instruction which the Court gave was not plain error. In fact, it is Plaintiff's

interpretation of the instruction as it relates to the law on municipal liability which is erroneous.

It is well established that section 1983 is not a respondeat superior statute. "[F]or purposes of

1983 an act could not be attributed to a municipality merely because it was an act of a municipal

agent performed in the course of exercising a power delegated to the municipality by local law,

and . . . 'it is [only] when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury that the government as an entity is responsible under 1983." Brown, 520 U.S. at 416-

17 (internal quotations omitted).

   The instruction informing the jury that Mr. Lawler must show both that an employee of

the City violated his rights and that the violation was caused by a City policy or custom is legally

correct. Such an instruction does not take away from the Supreme Court's conclusion in <u>Brown</u>

that it may be possible that "evidence of a single violation of federal rights, accompanied by a

showing that a municipality has failed to train its employees to handle recurring situations

presenting an obvious potential for such a violation, could trigger municipal liability." <u>Brown</u>,

520 U.S. at 409. While a single constitutional violation, by itself, may be sufficient to establish

section 1983 liability as to individual defendants, it is not enough to establish municipal liability.

<u>See, e.g.</u>, <u>Brown</u>, 520 U.S. at 405 (emphasis added) ("To the extent that we have recognized a

cause of action under 1983 based on a single decision <u>attributable to a municipality</u>, we have

done so only where the evidence that the  municipality had acted and that the plaintiff had

suffered a deprivation of federal rights also proved <u>fault and causation</u>."). In light of the law on

municipal liability, the Court finds no plain error in its  instruction to the jury.

      **B.**     **The jury's verdict was not against the weight of the evidence.**

      Plaintiff's final argument is that the jury failed to properly follow the jury instructions.

The Court construes this as an argument that the weight of the evidence did not support the jury

verdict. Where a party contends that a new trial is warranted because the verdict is against the

weight of the evidence, the trial court has less discretion. <u>Klein v. Hollings</u>, 992 F.2d 1285, 1290

(3d. Cir. 1993). However, the district court should grant "a new trial on the basis that the verdict

was against the weight of the evidence only where a miscarriage of justice would result if the

verdict were to stand." <u>Id.</u> at 1290. The Third Circuit has held that "[w]here the subject matter of

the litigation is simple and within a layman's understanding, the district court is given less

freedom to scrutinize the jury's verdict than in a case that deals with complex factual

determinations . . . . " <u>Id.</u> (citing <u>Lind v. Schenley Indus., Inc.</u>,  278 F.2d 79, 90-91(3d Cir. 1960)).

　　　The overall nature of Plaintiff's argument is that the evidence clearly demonstrated that his rights were violated, and the jury should have found in favor of his version of the facts. For example, Plaintiff's brief sets out the facts which the jury should have found as follows: "Plaintiff was stopped because of the political speech on his bumper . . . . All Plaintiff did was stand up for himself and he asserted his rights and was therefore retaliated against because he was exercising his first amendment right to free speech. . . . " (Pl.'s Br. 32). In support of his argument, perhaps because he did not request the transcript of the trial, Plaintiff mischaracterizes the trial record. For example, Plaintiff argues that Officer Loizos indicated that he was concerned for his safety because "Plaintiff was quoting the Constitution." The trial transcript reveals, however, that Officer Loizos indicated that Plaintiff's "anger and hostility never deescalated. The whole time he was in the back of the car it looked like he was reading from the Constitution search and seizure, ' you don't have a right to do this or that.' He was constantly yelling from the back of the police car. . . . He was yelling the entire time. (Loizos Test. 106:20 - 107:3). Plaintiff attempted to make the same mischaracterization at trial that he attempts to make now. In response to Officer Loizo's testimony, Plaintiff's counsel asked him, "So it makes you unsafe when somebody is reading excerpts from the Constitution, is that what you are saying?" (Loizos Test. 107: 4-6). Officer Loizos responded, "What I am saying is . . .," but was unable to finish that thought before Plaintiff's counsel interjected with another question. (Loizos Test. 107: 7-9).

　　　Although Plaintiff describes the evidence in favor of his claim as "crystal clear," the evidence was far from that, and Defendants set forth sufficient evidence to permit a jury to

reasonably find in their favor. For example, Officer Richardson testified that he initially stopped

Plaintiff for a traffic violation, and defense counsel submitted into evidence the report indicating

the reasons for Plaintiff's stop. (Richardson Test. 39-41). Officer Richardson testified that he

could not read Plaintiff's bumper stickers at the time he committed the traffic violation.

(Richardson Test. 87:13-21). Instead, both Officer Richardson and Officer Loizos testified that

they noticed Plaintiff's bumper stickers as Officer Richardson was completing the paperwork for

the stop. (Richardson Test. 35: 8-15; Loizos Test. 92: 3-17). Officer Richardson testified that the

pro-gun content in some of the bumper stickers provided him with a reasonable inference that

Plaintiff was carrying a concealed weapon, which prompted Officer Richardson to be "concerned

about [his] safety." (Richardson Test. 35:12-21). Both officers testified that at that point, Officer

Richardson proceeded to ask Plaintiff if he had a concealed weapon, to which Plaintiff responded

affirmatively. (Richardson Test. 35:15-19; Loizos Test. 92: 25:25 - 93:1).

At that point, both officers testified that Plaintiff began getting "agitated," "upset," and

"angry," and things escalated once they asked Plaintiff to step out of his vehicle so that they

could conduct a search. (Richardson Test. 37: 23, 28:3; Loizos Test. 92:24). Officer Loizos

testified that "[e]very time we would ask him a question or ask him to do something he became

angrier and we didn't know why." (Loizos Test. 94:17-20).

Both officers also testified that Plaintiff locked his car doors in an effort to prevent them

from searching his vehicle. (Richardson Test. 38:17-18; Loizos Test. 93:10). Officer Richardson

also testified regarding his rationale for conducting the search of Plaintiff's vehicle, explaining to

the jury that the "plus one rule" provides that "whenever you come into contact with somebody . .

. if they are carrying a firearm there is a chance that there is a high probability that they have one

-24-

more . . . . I just wanted to make sure that the vehicle was clear from the gun reach area from the driver's side seat." (Richardson Test. 39: 5-14).

Both officers also testified that Plaintiff made them feel unsafe, and therefore they placed him in handcuffs. (Richardson Test. 42: 3-6; Loizos Test. 95: 3-7). Moreover, the police report for the incident indicated that Plaintiff's "[w]eapon was being confiscated due to lack of cooperation with police," and Officer Richardson testified similarly on cross-examination. (Richardson Test. 43:17-22; 75: 22-25). Officer Loizos added that Plaintiff's weapon was confiscated because of his "hostility" and "anger," adding that he "could not allow somebody with that kind of demeanor to be walking around with a gun." (Loizos Test. 95:23 - 96:1).

Taken together, the officers' corroborating testimony would permit a jury to reasonably conclude that the officers did not violate any of Plaintiff's constitutional rights, and that they had reasonable grounds – particularly concern for their safety – in acting as they did. Therefore, Plaintiff has failed to meet his burden of demonstrating that a miscarriage of justice took place when the jury found in favor of Defendants.

V.    **CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for New Trial is denied. An appropriate Order follows.